UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROY BLACKMON,

                    Petitioner,

                                        CIVIL ACTION NO. 03-CV-71206-DT
v.                                      HONORABLE ARTHUR J. TARNOW

RAYMOND BOOKER,

                    Respondent.
_____/

### OPINION AND ORDER CONDITIONALLY GRANTING
### AMENDED PETITION FOR A WRIT OF HABEAS CORPUS

Michigan prisoner Roy Blackmon ("Petitioner") has filed an amended petition for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254 following a return to the state courts on remand

from the United States Court of Appeals for the Sixth Circuit.[1]  Petitioner was convicted of

second-degree murder, two counts of assault with intent to do great bodily harm, and felony

firearm following a jury trial in the Wayne County Circuit Court in 1999.  He was sentenced to

40-60 years imprisonment on the murder conviction, concurrent terms of 3-10 years

imprisonment on each of the assault convictions, and a consecutive term of two years

imprisonment on the firearm conviction.

In his amended petition, Petitioner raises claims concerning the improper admission of

gang evidence and related prosecutorial misconduct.  For the reasons stated, the amended

petition for a writ of habeas corpus is conditionally granted on both grounds.

_____

[1]*Blackmon v Booker*, 394 F.3d 399 (6th Cir, 2004).

1

I. <u>Facts</u>

Petitioner's convictions stem from the shooting death of Kenneth Tinsley and the

wounding of Michael Hearn and Tiffany Smith on Woodmont Street in Detroit, Michigan on

April 12, 1998. During opening statements, the prosecutor claimed that eyewitness testimony

would demonstrate that Petitioner committed the shooting. The prosecutor further stated:

> See, this isn't just a serious crime. See, this is a – looks like and what will appear
> to you to be a little feud. See, the defendant, Mr. Blackmon, it's alleged through
> other witnesses which you're going to hear, is a member of the Schoolcraft Boys,
> Schoolcraft Boys being a local gang that hangs out around the area of Schoolcraft
> Road. And those individuals don't get along too well with the individuals who
> live on Woodmont, including possibly my – some of my witnesses.

Trial Tr., pp. 154-55.

The prosecution presented the testimony of the two surviving victims of the shooting at

trial. Michael Hearn identified Petitioner as the shooter and said that he knew him from the

neighborhood. Hearn also stated that he would associate Petitioner and a man named Duane

Harris ("Harris"), aka Jimmy Crost, with a group called the Schoolcraft Boys, but Hearn did not

claim that the incident was related to any gang dispute.[2] Hearn testified that he was standing

outside Nancy Ellis' home on Woodmont Street on April 12, 1998 when he saw Harris leave the

house around 8:15 p.m. He saw a burgundy Impala come down the street and saw Petitioner exit

the passenger side. Petitioner was wearing blue jeans, a red shirt, and a red hat with braids

hanging out. The car pulled into the alley as Petitioner stood in front of Ellis' house and spoke

---

[2]Defense counsel objected to the admission of gang-related evidence and argument throughout
the trial, but the trial court admitted the evidence finding that it was related to identification, motive,
and/or the reluctance of witnesses to testify.

to Harris. As Harris walked toward the alley, Petitioner turned and started shooting. Hearn heard six to eight shots. The first two shots hit Hearn in the right arm and back of the neck.

While in the hospital, Hearn gave police a detailed description of the shooter, but his police statement did not include a name. Hearn initially testified that he thought he gave the officer the name "Roy," but then said he could not recall whether he did so. He then stated that he did not give the name "Roy" because that he wanted to make sure he named the right person. Hearn and Arthur Anderson were called by police and asked to attend a line-up following the shooting. Hearn identified Petitioner as the shooter at that line-up.

Tiffany Smith, who was 10 years old at the time of the shooting, testified that she thought she heard two people shooting - one from the alley and one from the street. She could not identify the shooters. Smith was shot in the hip while standing on her bicycle. Smith also testified that she saw the phrase "RIP Tiffany" signed by the Schoolcraft Gang on a school slide following the incident, but denied being afraid to testify.

Several witnesses to the shooting also testified at trial. Arthur Anderson identified Petitioner as the shooter and stated that he knew Petitioner from high school. Anderson lived on Woodmont Street and was on his porch when the shooting occurred. Anderson testified that he saw Petitioner wearing a red hat, pointing a gun, and shooting toward his house where Kenyatta Simons and other men were standing. Anderson heard shots from one weapon as he ran into his house. Anderson stated that he did not see Michael Hearn or Duane Harris at the time of the shooting. Anderson testified that the shooting occurred around 8:00 p.m. and it was daylight.

Anderson said that he discussed the shooting with Michael Hearn when Hearn got home from the hospital. Anderson identified Petitioner at a pre-trial line-up. Anderson explained that he was at Hearn's home when the police called and asked him to come to the station to identify "Roy." He went to the station with Hearn, but they participated in separate line-ups. Anderson admitted that he was currently being detained for failing to appear in court. He said that he felt intimidated by police. He also testified that he believed that Petitioner and Harris were members of a gang called the Schoolcraft Boys and that this caused him fear or intimidation about testifying. Upon further questioning, Anderson clarified that he did not want to be involved in the proceedings and that he felt intimidated by the whole thing because it was a murder case.

Nancy Ellis testified that she lived on Woodmont Street where the shooting occurred. Duane Harris was visiting her with his daughter on April 12, 1998 when Kenyatta Simons stopped by. Simons was angry and told her to tell Harris that he was going to get shot when he came outside. Nancy Ellis had recently stopped dating Simons. Harris then asked to use the telephone and she heard him say, "Come get me, I'm on Woodmont," to the recipient of the call. Ellis saw a burgundy Impala drive up and saw a person in a red shirt, whom she did not identify, exit the car. She then heard five shots. Ellis admitted telling the police that she had received a call from a person she thought was Petitioner shortly after the shooting instructing her not to identify him. Ellis testified that the shooter was too far way for her to identify. She acknowledged telling police who her sister Adrienne identified as the shooter. She also claimed that the police pressured her into making a statement and that she was reluctant to testify. When

questioned about the gang issue, Ellis testified that Harris associates with the Schoolcraft Boys but she was not sure if he was a gang member.

Tiffany Goggans testified that she was in a back room of the Ellis home when the shooting occurred. She heard four or five shots, but did not see the shooting. She admitted that prior to trial she gave police a statement indicating that Adrienne was saying that Petitioner was the shooter.[3]

Autumn Taylor testified that she was at Ellis' home when she heard several gunshots. She dropped to the sidewalk and crawled to the house. She did not see the shooter, but indicated that Nancy Ellis told her who it was following the incident.

Adrienne Ellis testified that she was visiting her sister Nancy on April 12, 1998. She saw Kenyatta Simons come over and speak to her sister, push her face, and say that he was going to shoot Duane Harris when he left the house. While she was on the porch, she saw an Impala pull up and park in the alley. Harris went outside. Adrienne Ellis then saw a black man exit the car. She could not identify the man or recall his clothing, but she saw a gun. She heard five or six shots and ran inside the house and called the police. She admitted that she identified the shooter as "Roy" in her police statement, but said that she did not know who it was. She claimed that while she was being questioned at the police station, officers told her that she would be arrested if she did not identify Petitioner as the shooter.

---

[3]Defense counsel objected to the admission of this hearsay testimony, but the trial court allowed it as impeachment evidence and instructed the jury that the testimony was not admitted to establish the truth of the matter.

Kenyatta Simons testified that he was friends with Michael Hearn and had dated Nancy Ellis. He denied being upset that Duane Harris was at Ellis' home and denied having words with either of them. He testified that he saw the shooter in front of Ellis' house wearing red, but did not identify him. He saw Harris walk from Ellis' house to the shooter on the sidewalk and saw a car in the alley. He then heard five or six shots and realized that Michael Hearn, Kenneth Tinsley, and the little girl were hit. Simons ducked when he heard the shots.

Police Officer Marlise Harowski testified that she found five casings at the scene of the shooting. Her preliminary complaint report did not list Arthur Anderson, Nancy Ellis, Adrienne Ellis, or Michael Hearn as witnesses and indicated that the shooting occurred at night.

The defense presented two witnesses. Duane Harris testified that he visited Nancy Ellis with his daughter on April 12, 1998. He heard Kenyatta Simons say that he was going to shoot him, but did not believe it. He then heard arguing and gunshots, but did not see the shooter. He ran away with his daughter, leaving the car he was using in the driveway. When he discovered that police were looking for him in connection with the shooting, he consulted a lawyer and turned himself in. He was subsequently released for lack of evidence against him. Harris testified that he was Petitioner's friend and that he did not see Petitioner at the scene of the shooting. He also denied being involved in a gang.

After Harris testified, one of the jurors gave the court a note asking if the jury could be released ten minutes prior to the rest of the people after "sentencing" rather than five minutes earlier as on previous days. Defense counsel sought to exclude the juror. After questioning the

juror about possible bias and finding that she could fairly decide the case and had not tainted the other jurors, the trial court refused to dismiss the juror.

Petitioner also testified on his own behalf at trial. He stated that he was at home when the shooting occurred. He denied being involved in the shooting and denied calling Nancy Ellis about the incident. Petitioner stated that he turned himself in when he learned that police were seeking him in connection with the shooting. In response to questions on cross-examination, Petitioner claimed that he had nothing against any of the witnesses and said that they must be mistaken in their testimony.[4] He also denied being involved in a gang.

During closing argument, the prosecutor made repeated references to Petitioner's alleged gang affiliation, the Schoolcraft Boys, and the witnesses' purported fear in testifying. Specifically, the prosecutor made the following arguments:

> And Arthur Anderson's under the gun even more because he candidly admitted to you on the stand I'm intimidated. Who are you intimidated I asked him by, the police? Well, yeah, the police and other things. What other things? He knows that the defendant and his buddy, Jimmy Crost or Duane Harris or however you want to know his – his name or however he identified himself, member of these Schoolcraft Boys. Matter of fact, during the testimony he looked around and I asked him do you see any of them, any others in the courtroom? And he looked around and looked right at Mr. Blackmon, if you caught that.

Trial Tr., pp. 757-58.

> Funny, Tiffany Smith as she's sitting on her playground at her school goes over to the slide in the school and it says R.I.P. Tiffany Smith, signed love, the Schoolcraft Boys, not love, and Tiffany doesn't. Tiffany Smith, I mean you can gather from her age, is she scared? Yes, she's scared. Scared why, because she

---

[4]Defense counsel objected to the prosecutor's questions about other witnesses' credibility. The trial court upheld some objections but overruled others without much explanation.

told her mother?  This is the intimidation.  That's why people are scared of these people.

*Id*. at 768.

This gang stuff, this is nothing I'm making up out of the blue.  This is what witnesses indicated.  Tomorrow, the next day after another case, there might be another gang member, might be an unrelated shooting, but today and since Wednesday, we have had the Schoolcraft Boys.

* * *

And strangely enough, something is causing a whole lot of fear in these witnesses. Something is causing a whole lot of fear about this man here, Mr. Blackmon.  Not just run of the mill stuff, I'm testifying against a shooter, something about the Schoolcraft Boys . . . .

*Id*. at 808-09.

I hope nobody expected him to say I'm a gang member because that's not going to happen. . . .you don't throw your common sense out the door when you're sitting here in that chair and all these people are identifying you and you're laughing about it.  Why?  Because you're going to take care of business later. Obviously you didn't scare these witnesses enough.  You should have wrote tombstones on their front doors.

*Id*. at 812.  The prosecutor concluded his rebuttal by telling the jury:

I don't know anything about this gang stuff and I can be naive.  That's in this case.  That's what this case is about.

*Id*. at 816.

At the close of trial, the jury convicted Petitioner of second-degree murder, two counts of assault with intent to do great bodily harm, and felony firearm.  The trial court subsequently sentenced him to a term of 40-60 years imprisonment, two concurrent terms of 3-10 years imprisonment, and a consecutive term of two years imprisonment on those convictions, respectively.

II.     **Procedural History**

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of

Appeals, asserting claims concerning the improper admission of evidence, prosecutorial

misconduct, and sentencing.  The Michigan Court of Appeals affirmed Petitioner's convictions

and sentence.  *People v. Blackmon*, No. 219350, 2001 WL 1081603 (Mich. Ct. App. Sept. 14,

2001) (unpublished).  Petitioner filed a delayed application for leave to appeal with the Michigan

Supreme Court raising the same claims, which was denied.  *People v. Blackmon*, 467 Mich. 851,

649 N.W.2d 78 (2002).

Petitioner, through counsel, filed an initial habeas petition with this Court asserting the

following claims:

I.      The erroneous admission of irrelevant and highly prejudicial testimony
        alleging Petitioner was a member of a gang deprived him of his due
        process right to a fair trial under the Federal Constitution.

II.     Petitioner was denied his due process right to a fair trial under the Federal
        Constitution due to repeated, intentional, and outrageous prosecutorial
        misconduct.

        a.      The prosecutor improperly elicited and used for prejudicial
                purposes the alleged gang affiliation;

        b.      The prosecutor improperly introduced hearsay evidence under the
                guise of impeachment evidence;

        c.      The prosecutor engaged in misconduct by questioning Petitioner as
                to his opinion on the believability of prosecution witnesses.

III.    The trial judge violated Petitioner's due process right to a fair trial under
        the Federal Constitution by refusing to excuse an empaneled juror where
        the juror indicated prior to the close of the evidence that she had already

adjudged Petitioner guilty, and may have infected the remaining jurors
with such bias and prejudgment.

IV.     The Michigan Court of Appeals' failure to reverse Petitioner's convictions
on harmless error grounds after finding that both prosecutorial misconduct
and the erroneous admission of prejudicial gang-related evidence occurred
during his trial was contrary to, or an unreasonable application of, clearly
established federal law.

The Court conditionally granted the petition finding that the trial court constitutionally

erred in admitting the gang affiliation evidence, that the prosecutor engaged in misconduct which

rendered the trial fundamentally unfair, and that the errors were not harmless beyond a

reasonable doubt.  On appeal, the Sixth Circuit reversed finding that Petitioner had not

sufficiently presented his issues to the state courts as federal constitutional issues and remanded

the case for further proceedings.  *Blackmon v. Booker*, 384 F.3d 399 (6th Cir. 2004).  On remand,

this Court dismissed the petition without prejudice to allow Petitioner to return to state court and

fully exhaust his state remedies.

Petitioner, through counsel, filed a motion for relief from judgment in the state trial court

asserting that the prosecutor engaged in misconduct which rendered the trial fundamentally

unfair and that the errors were not harmless.  The trial court denied the motion on February 6,

2006.  Petitioner filed an application for leave to appeal with the Michigan Court of Appeals

which was denied.  *People v. Blackmon*, No. 268628 (Mich. Ct. App. Sept. 15, 2006)

(unpublished).  Petitioner then filed an application for leave to appeal with the Michigan

Supreme Court.  *In lieu* of granting leave to appeal, the court remanded the case to the Michigan

Court of Appeals for consideration as on leave granted. *People v. Blackmon*, 477 Mich 1125,

730 N.W.2d 475 (2007).

On remand, the Michigan Court of Appeals affirmed the trial court's denial of relief

finding, in relevant part, that the prosecutor's improper elicitation of gang affiliation testimony

and improper gang affiliation argument did not amount to constitutional error. *People v.

Blackmon*, 280 Mich. App. 253, 761 N.W.2d 172 (2008). Petitioner filed an application for

leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People

v. Blackmon*, 483 Mich. 1022, 765 N.W.2d 338 (2009)(Chief Justice Marilyn Kelly voted to

grant leave to appeal).

Petitioner thereafter moved to reopen this case, and this Court granted his motion.

Petitioner, through counsel, filed an amended petition for a writ of habeas corpus asserting that

his federal constitutional right to due process was violated by both (1) the introduction of highly

prejudicial and irrelevant testimony about his gang affiliation, and (2) the prosecutor's

misconduct in introducing and repeatedly commenting upon his gang affiliation. Respondent has

filed an answer to the amended petition contending that the claims should be denied for lack of

merit. Petitioner has filed a reply to that answer.

**III.     Standard of Review**

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim –

> (1)     resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law, as
>         determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented in the
>         State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual

determinations.  28 U.S.C. § 2254(e)(1).

**IV.     <u>Analysis</u>**

   A.     <u>Gang Affiliation Evidentiary Claim</u>

Petitioner first claims that he is entitled to habeas relief because the trial court erred in

admitting evidence of his alleged gang affiliation and that this error resulted in a violation of his

right to a fair trial.  Respondent contends that this claim is not cognizable on habeas review and

lacks merit.

The general rule is that alleged trial court errors in the application of state evidentiary law

are generally not cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502

U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir.

1993).  However, when an evidentiary ruling is "so egregious that it results in a denial of

fundamental fairness, it may violate due process and thus warrant habeas relief."  *Bugh v.

Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Clemmons v. Sowders*, 34 F.3d 352, 356 (6th

Cir. 1994).

On direct appeal, the Michigan Court of Appeals considered this issue as a matter of state

law and concluded that the trial court erred in admitting the gang affiliation evidence because the

evidence of Petitioner's "alleged association with the Schoolcraft Gang was unfairly prejudicial and merited exclusion under MRE 403." In reaching this conclusion, the court rejected the trial court's justifications of identification, motive, and witness intimidation for admitting the evidence. However, the court went on to conclude that the error was not outcome determinative given the evidence of Petitioner's guilt presented at trial. *See Blackmon*, 2001 WL 1081603 at *1-3.

On collateral review, the Michigan Court of Appeals did not distinctly address the trial court's improper admission of the gang evidence, but generally indicated that the trial court's errors were evidentiary in nature and not constitutional error. *See Blackmon*, 280 Mich. App. at 259-62.[5]

The Michigan Court of Appeals has ruled that the admission of the gang affiliation evidence was erroneous under Michigan law. This Court accepts that finding as federal courts must defer to a state court's judgment on issues of state law. *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir. 2003). The question for the Court is whether the admission of the gang affiliation evidence rose to the level of a constitutional violation such that it rendered Petitioner's trial fundamentally unfair. The Michigan Court of Appeals on collateral review has indicated

---

[5]To be fair, the Court notes that the Michigan Court of Appeals likely did not separately address the evidentiary issue because Petitioner's counsel did not brief it as such. One could argue that Petitioner has procedurally defaulted the evidentiary claim because he did not present it as a distinct issue in the state courts on collateral review and no longer has an available remedy to do so. Respondent, however, has not argued procedural default. Accordingly, that defense is waived. *See Benoit v. Bock*, 237 F. Supp. 2d 804, 807 (E.D. Mich. 2003).

13

that it did not.[6]  This Court finds that the state court's decision is contrary to or an unreasonable

application of Supreme Court precedent and the facts of this case.

The United States Supreme Court has held that the admission of gang affiliation

testimony may be appropriate when it is probative of a witness's bias toward a defendant.  *See*

*United States v. Abel*, 469 U.S. 45, 49 (1984) (government could impeach defense witness by

showing that he and defendant were members of same gang whose members were sworn to lie

on behalf of each other).  In keeping with *Abel*, federal courts have ruled that gang affiliation

evidence is admissible only when it is relevant to a material issue in the case.  *See United States*

*v. Takahashi*, 205 F.3d 1161, 1164 (9th Cir. 2000).  For example, gang affiliation evidence may

be admissible to establish identity, *United States v. Easter*, 66 F.3d 1018, 1021 (9th Cir. 1995), an

element of the crime such as with a conspiracy, *United States v. Brown*, 200 F.3d 700, 708 (10th

Cir. 1999), opportunity, *United States v. Jobson*, 102 F.3d 214, 221 (6th Cir. 1996), motive,

intent, or plan, *Snell v. Lockhart*, 14 F.3d 1289, 1299 (8th Cir. 1994); *United States v. Hawkins*,

823 F.2d 1020, 1023 (7th Cir. 1987); *Briggs v. Makowski*, No. 00-70704-DT, 2000 WL 1279168,

*4 (E.D. Mich. Aug. 18, 2000), the relationship between parties, *United States v. Gibbs*, 182

F.3d 408, 430 (6th Cir. 1999), or for impeachment such as establishing a witness's fear, *United*

*States v. Keys*, 899 F.2d 983, 987 (10th Cir. 1990).

---

[6]To the extent that the state court did not clearly address the evidentiary issue, the Court's review of this claim would be *de novo*.  *See Dorn v. Lafler*, 601 F.3d 439, 443 (6th Cir. 2010) (when a state court fails to consider an issue or does not specifically address whether the alleged error constitutes a denial of federal constitutional rights, the deference due under 28 U.S.C. § 2254(d) does not apply, and habeas review is *de novo*); *Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).  The Court's result would clearly be the same under this standard.

In this case, as found by the Michigan Court of Appeals, testimony regarding Petitioner's alleged gang membership was not necessary for the prosecution to establish its case and had little probative value. There was no evidence indicating that the shooting was motivated by gang activity. To the contrary, the testimony revealed that the shooting arose from a domestic situation involving Nancy Ellis, Kenyatta Simons, and Duane Harris. The prosecution offered testimony to demonstrate a friendship between Harris and Petitioner and had no cause to resort to the introduction of gang-affiliation testimony and argument to show motive, particularly since Harris and Petitioner both denied gang membership. Similarly, the gang affiliation evidence was not necessary to establish identity. The main witnesses against Petitioner, Michael Hearn and Arthur Anderson, testified that they knew Petitioner from the neighborhood and from high school, respectively.

Additionally, as the Court of Appeals determined, Petitioner's alleged gang membership was not properly admitted for impeachment purposes, *i.e.*, to show witness intimidation. Most witnesses, including Michael Hearn, Tiffany Smith, Nancy Ellis, and Adrienne Ellis, denied being afraid of Petitioner. Several witnesses, including Michael Hearn, Nancy Ellis, Adrienne Ellis, and Arthur Anderson stated that they were pressured by police and intimidated by prosecuting authorities. Of the witnesses who seemed reluctant to testify, only one, Arthur Anderson, indicated that he feared Petitioner because of his gang membership. However, Anderson then clarified that he felt intimidated and was reluctant to testify because it was a murder trial. Anderson further stated that he would have felt the same way no matter who was on trial. Thus, the record indicates that the gang evidence had little probative value in this case.

15

Further, the gang evidence was inherently prejudicial. The United States Supreme Court has determined that the submission of gang affiliation evidence in a criminal proceeding may be constitutional error when such evidence is irrelevant to the issues at hand. *See Dawson v. Delaware*, 503 U.S. 159, 165 (1992) (defendant's First Amendment rights were violated by the admission of gang evidence in sentencing proceedings where the evidence proved nothing more than his abstract beliefs). Federal courts have long-recognized that gang evidence is highly prejudicial as most jurors are likely to view a criminal defendant's gang membership with disfavor. *See Jobson*, 102 F.3d at 214, 219 n. 4; *United States v. Campbell*, No. 2:05-CR-23, 2009 WL 595944, *2-3 (E.D. Tenn. March 6, 2009) (granting defendant's motion to exclude gang affiliation evidence where government failed to show that such evidence established something other than propensity to commit the crime); *accord United States v. Jernigan*, 341 F.3d 1273, 1285 (11th Cir. 2003).

The Seventh Circuit has explained:

> Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior. There is therefore always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict. Guilt by association is a genuine concern whenever gang evidence is admitted.

*United States v. Irvin*, 87 F.3d 860, 865 (7th Cir. 1996).

Simply put, evidence of gang membership, as with other evidence of uncharged misconduct intended to show criminal propensity, "deflects a jury's attention from the immediate charges and causes it to prejudge a person with a disreputable past, thereby denying that person a

fair opportunity to defend against the offense that is charged." *United States v. Roark*, 924 F.2d 1426, 1434 (8th Cir. 1991) (citing *Michelson v. United States*, 335 U.S. 469, 476 (1948)). Evidence that makes a conviction "more likely because it provokes an emotional response in the jury or otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged" should be excluded when it has little probative value. *See United States v. Hodges*, 770 F.2d 1475, 1480 (9th Cir. 1985); *see also* Fed. R. Evid. 403, 404.

Federal courts have found that the improper admission of gang evidence can be sufficiently prejudicial so as to warrant reversal of a conviction. For example, in *United States v. Hendrix*, 52 F.3d 326, 1995 WL 218472 , *2-3 (6th Cir. 1995), the United States Court of Appeals for the Sixth Circuit held that the admission of gang evidence impermissibly tainted a criminal defendant's trial where there was no proof that the crime involved gang activity and the gang evidence seemed intended to "appeal to jurors' prejudices about the young black men, rather than to their disinterested judgment of [the defendant's] guilt or innocence of the charged crime." *See also United States v. Anderson*, 333 Fed. Appx. 17, 24 (6th Cir. 2009) (citing *Hendrix* and stating that gang evidence is inadmissible if there is no connection between the gang evidence and the charged offense); *Irvin, supra*, 87 F.3d at 864-66 (trial court abused its discretion in not excluding, under Fed. R. Evid. 403, evidence of gang membership when its probative value was minimal, and when "highly charged gang-affiliation evidence served as a substitute for. . .direct evidence, increasing the chance of guilt purely by association"); *United States v. Elkins*, 70 F.3d 81, 83-85 (10th Cir. 1995) (trial court erred in admitting evidence of

defendant's gang membership in federal firearm case where prosecution had not established that defendant and witness had common gang membership and had not shown biased testimony due to fear); *Roark, supra*, 924 F.2d at 1432-34 (prosecution's attempt throughout trial to tie defendant's guilt directly to his association with motorcycle club was reversible error that limiting instructions could not cure); *cf. United States v. Wheeler*, 67 Fed. Appx. 296, 300 (6th Cir. 2003) (finding that evidence of defendant's gang involvement was improperly admitted where it had no probative value in drug conspiracy case and created inference that defendant was involved in conspiracy based upon his association with notorious gang but concluding that such error was harmless given extensive evidence of guilt).

The gang-related testimony presented at Petitioner's trial unduly prejudiced Petitioner as it preyed on the jurors' emotions and invoked their negative feelings about gangs in our society. It was exacerbated by the prosecutor's reliance on it. See Issue B. The testimony encouraged the jurors to find: (1) that Petitioner was member of the Schoolcraft Boys gang; (2) that witnesses were intimidated by Petitioner because of his gang affiliation; and (3) that Petitioner must have committed the crime because witnesses feared him and the Schoolcraft Boys.

Put another way, the admission of the gang evidence eroded the presumption of innocence because it encouraged jurors to find Petitioner guilty of the offense based upon his purported gang affiliation rather than the evidence presented at trial. Such a process is inconsistent with the demands of due process and the constitutional guarantee of a fair trial. Given the limited probative value of the gang affiliation testimony and its highly prejudicial

effect upon the jury, this Court concludes that the trial court constitutionally erred in admitting

such testimony.

      The next issue to be decided by the Court is whether the erroneous admission of the gang

affiliation testimony deprived Petitioner of a fair trial or whether it was harmless error as a

matter of federal law.  On direct appeal and implicitly on collateral review, the Michigan Court

of Appeals found the erroneous admission of the evidence to be a non-constitutional harmless

error because it was not "outcome determinative" in light of the untainted evidence against

Petitioner – namely the eyewitness identifications of Petitioner by Michael Hearn and Arthur

Anderson.  The state court did not address this issue as a federal question.  Accordingly, this

Court will review the issue *de novo*.  *See Dorn v. Lafler*, 601 F.3d 439, 443 (6th Cir. 2010)

(when a state court fails to consider an issue or does not specifically address whether the alleged

error constitutes a denial of federal constitutional rights, the deference due under 28 U.S.C. §

2254(d) does not apply, and habeas review is *de novo*); *Higgins v. Renico*, 470 F.3d 624, 630

(6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins*

*v. Smith*, 539 U.S. 510, 534 (2003)).

      For purposes of federal habeas review, a constitutional error that implicates trial

procedures is considered harmless if it did not have a "substantial and injurious effect or

influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993);

*see also O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (habeas court should grant petition if it

has "grave doubt" about whether trial error had substantial and injurious effect or influence upon

jury's verdict).  Harmless error analysis applies to claims involving the improper admission of

evidence, *see, e.g., Chambers v. Maroney*, 399 U.S. 42, 52-53 (1970), as well as claims of

prosecutorial misconduct. *See Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003).

As discussed *supra*, the admission of the gang affiliation evidence was so inherently

prejudicial that it likely tainted the whole trial. With this in mind, the Court cannot conclude that

the admission of the evidence was harmless under the standard set forth in *Brecht*. Contrary to

the findings of the Michigan Court of Appeals, the record reveals that the evidence against

Petitioner was far from overwhelming. There was no physical evidence linking Petitioner to the

shooting. His conviction rested solely upon the identification testimony of witnesses to the

shooting. Most eyewitnesses were unable (or unwilling) to identify the shooter at trial. Only

two witnesses, Michael Hearn and Arthur Anderson, identified Petitioner as the shooter at trial.

Their testimony, however, was subject to significant challenge.

First, as to Michael Hearn's testimony, the record indicates that he did not identify

Petitioner by name as the shooter in his initial police statement despite having known him from

the neighborhood for years. In fact, Hearn gave a detailed description of the man who did the

shooting, but did not name Petitioner, even though he included many other names in his

description of the incident. When asked about this anomaly, Hearn claimed that he did not name

Petitioner as the shooter because he had to make sure it was the right person. Hearn did not

explain how he discovered who was the right person.

Second, with regard to Arthur Anderson's testimony, the record indicates that his

identification may have been tainted. Anderson testified that he identified Petitioner at a pre-

trial line-up after the police asked him if he knew what Petitioner looked like and asked whether

20

he could pick "Roy" out of a line-up. Anderson admitted that the police told him that "Roy" did

the shooting and that they were coming to get him so that he could identify "Roy" in the line-up.

Anderson also admitted discussing the case with Michael Hearn following the shooting.

Anderson's testimony also conflicted with other descriptions of the event in that he stated that

did not see Michael Hearn or Duane Harris outside when the shooting occurred and he claimed

that the shooting occurred when the sun was shining despite the fact that it happened at 8:15 p.m.

on April 12, 1998. Given the questionable identifications by these witnesses, this Court cannot

conclude that the error in admitting the gang-affiliation testimony was harmless.

Further, the Court is mindful that the trial court failed to take appropriate action to

minimize the prejudicial effect of the gang evidence on the jury, *e.g.*, by clearly instructing the

jury to limit their consideration of the gang affiliation testimony to a proper purpose, *e.g.*,

impeachment. *See Jobson*, 102 F.3d at 222 (noting trial court's error in failing to instruct the

jury on proper purpose of gang evidence and finding that such error was not harmless); *see also*

*Takahashi*, 205 F.3d at 1165 (district court did not abuse its discretion in admitting gang

evidence where it took steps to minimize undue prejudice); *Burks v. Borg*, 27 F.3d 1424, 1431

(9th Cir. 1994) (finding that gang evidence and argument was harmless error upon habeas review

given trial court's "prompt and effective action" in instructing the jury on the evidence). The

trial court's failure to clearly instruct the jury as to an appropriate purpose for consideration of

the gang affiliation testimony exacerbated the prejudice to Petitioner and further supports a

finding that the admission of the gang evidence was not harmless.

Having thoroughly reviewed the record, this Court finds that the Michigan Court of
Appeals' decision that the admission of the gang evidence was non-constitutional and not
outcome determinative is inconsistent with United States Supreme Court precedent and
constitutes an unreasonable application thereof and of the facts in light of the record. Given the
inherently prejudicial effect of the gang evidence and the inconsistent and disputed identification
testimony against Petitioner, the Court has grave doubt about whether the admission of the gang
evidence had a substantial and injurious effect or influence upon the jury's verdict. This is
especially true in light of the prosecutor's use of the unconstitutional evidence in closing
argument. *Infra*, B. Accordingly, the Court concludes that Petitioner is entitled to habeas relief
on his gang affiliation evidentiary claim.

B.    Gang Affiliation Prosecutorial Misconduct Claim

Petitioner also claims that the prosecutor engaged in misconduct by eliciting the gang
evidence and emphasizing Petitioner's alleged gang affiliation throughout the trial, particularly
in closing arguments. Respondent contends that this claim lacks merit.

The tone and substance of the prosecutor's use in closing argument is exemplified by:

I don't know anything about this gang stuff and I can be naive. That's in this
case. That's what this case is about.

*Id*. at 816. That followed several other strong reliance on the gang testimony:

Funny, Tiffany Smith as she's sitting on her playground at her school goes over to
the slide in the school and it says R.I.P. Tiffany Smith, signed love, the
Schoolcraft Boys, not love, and Tiffany doesn't. Tiffany Smith, I mean you can
gather from her age, is she scared? Yes, she's scared. Scared why, because she
told her mother? This is the intimidation. That's why people are scared of these
people.

*Id*. at 768.

> This gang stuff, this is nothing I'm making up out of the blue. This is what
> witnesses indicated. Tomorrow, the next day after another case, there might be
> another gang member, might be an unrelated shooting, but today and since
> Wednesday, we have had the Schoolcraft Boys.
>
> * * *
>
> And strangely enough, something is causing a whole lot of fear in these witnesses.
> Something is causing a whole lot of fear about this man here, Mr. Blackmon. Not
> just run of the mill stuff, I'm testifying against a shooter, something about the
> Schoolcraft Boys . . . .

*Id*. at 808-09.

> I hope nobody expected him to say I'm a gang member because that's not going
> to happen. . . .you don't throw your common sense out the door when you're
> sitting here in that chair and all these people are identifying you and you're
> laughing about it. Why? Because you're going to take care of business later.
> Obviously you didn't scare these witnesses enough. You should have wrote
> tombstones on their front doors.

*Id*. at 812.

It is well-settled that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The reviewing court's focus is on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra*, 4 F.3d at 1355).

The Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447,

452 (6th Cir. 2002) (citing cases).[7]  First, the court must determine whether the challenged

statements were indeed improper.  *Id.* at 452.  Upon a finding of such impropriety, the court must

then look to see if the statements were flagrant.  *Id.*  Flagrancy is determined by an examination

of four factors:  1) whether the statements tended to mislead the jury or prejudice the accused; 2)

whether the statements were isolated or among a series of improper statements; 3) whether the

statements were deliberately or accidentally before the jury; and 4) the total strength of the

evidence against the accused.  *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000)

(citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)).

> [T]o constitute the denial of a fair trial, prosecutorial misconduct
> must be 'so pronounced and persistent that it permeates the entire
> atmosphere of the trial,' or 'so gross as probably to prejudice the
> defendant.'

*Pritchett*, 117 F.3d at 964 (citations omitted).

On direct appeal, the Michigan Court of Appeals found that the "prosecution's repeated

solicitation of gang testimony and argument to the jury in the absence of a factual basis to

support its theory constituted misconduct."  The court further concluded, however, that the "non-

constitutional" error was harmless given the strength of the evidence of Petitioner's guilt.  *See*

*Blackmon*, 2001 WL 1081603 at *2-3.  On collateral review, the Michigan Court of Appeals

again ruled that the prosecutorial errors were not constitutional and were not outcome

determinative.  Although the court's analysis is somewhat difficult to follow, it can be said that

---

[7]Essentially, this inquiry corresponds with the Court's determination as to whether the trial court erred in admitting the gang affiliation testimony.  The ultimate question to be decided for purposes of both the evidentiary claim and the prosecutorial misconduct claim is whether Petitioner's trial was rendered fundamentally unfair.

the court essentially concluded that the prosecutor's errors did not amount to a due process

violation or otherwise render Petitioner's trial fundamentally unfair. *See Blackmon*, 280 Mich.

App. at 260-70.

This Court finds that the Michigan Court of Appeals' decision is contrary to or an

unreasonable application of Supreme Court precedent as well as the facts in light of the

evidence. Considering the factors discussed in *Macias*, this Court finds that the prosecutor's

comments regarding Petitioner's alleged gang affiliation constituted misconduct and rendered

Petitioner's trial fundamentally unfair in violation of the Constitutionaljnh law. First, as found

by the Michigan Court of Appeals and discussed *supra*, the prosecutor did not have a legitimate

purpose for soliciting the gang affiliation evidence. Moreover, once the evidence indicated that

the shooting was not gang-related, the prosecutor had no basis for repeatedly pursuing the gang

angle and claiming that the case was about gang violence. Similarly, once the witnesses denied

being intimidated by Petitioner and/or the Schoolcraft Gang, the prosecutor had no basis for

repeatedly arguing that those witnesses were intimidated by Petitioner's alleged gang affiliation

– a fact which most of them denied.[8] It is well-settled that it is misconduct for a prosecutor to

misstate the evidence or to assume the existence of prejudicial facts not in evidence. *See Darden*

*v. Wainwright*, 477 U.S. 168, 182 (1986); *see also Gordon v. Kelly*, 205 F.3d 1340, 2000 WL

145144, *8-9 (6th Cir. 2000) (prosecutor was "not entitled to create out of whole cloth a reason

for [the witness's] fear that [the witness] himself denied").

---

[8]Even Arthur Anderson, who initially stated that he was intimidated by Petitioner, clarified that
he was reluctant to testify because it was a murder case and that he would have felt the same way
no matter who was on trial.

25

Second, the prosecutor's statements concerning the gang evidence were flagrant. The statements tended to mislead the jury by implying that Petitioner should be found guilty of the shooting based upon his alleged gang membership, *i.e.,* guilt by association, rather than the evidence before the court. The prosecutor encouraged the jury to find Petitioner guilty of the crime based upon his bad character, as evidenced by his alleged gang membership. When a prosecutor "dwells on a defendant's bad character" to argue that the defendant committed the crime or had the propensity to commit the crime, the prosecutor has engaged in misconduct. *See Washington v. Hofbauer*, 228 F.3d 689, 699 (6th Cir. 2000). The prosecutor's final words to the jury were: "I don't know anything about this gang stuff and I can be naive. That's in this case. That's what this case is about." Yet the evidence indicated that the shooting concerned a domestic situation unrelated to gang activity. The prosecutor had no right to suggest that the shooting was gang-related when no evidence was presented to support his claim. *See Berger, supra*, 295 U.S. at 84-85 (holding that it is improper for a prosecutor to assume the existence of prejudicial facts not in evidence). Moreover, as discussed in detail *supra*, evidence of gang membership is highly prejudicial and inflammatory. As one court has sardonically observed, "gangs suffer from 'poor public relations.'" *Irvin*, 87 F.3d at 864 (citing cases).

Third, the prosecutor's statements were not isolated in nature, but rather constituted a pattern of questioning and argument throughout the trial. In fact, this Court found 16 instances in which the prosecutor asked questions, made references, or presented argument on the issue of gang affiliation. Throughout his closing argument, the prosecution argued that Petitioner was a gang member and that his affiliation with the Schoolcraft Boys instilled fear in witnesses and

made them reluctant to testify. There is no question that those statements were deliberately placed before the jury and constituted part of the prosecution's strategy to convict Petitioner.

Lastly, as discussed *supra*, the evidence against Petitioner was not overwhelming. The Court thus finds that the prosecutor's misconduct rose to the level of a constitutional violation and rendered his trial fundamentally unfair. Further, as with the erroneous admission of the gang evidence itself, the Court has a little doubt about whether the prosecutor's misconduct in repeatedly pursuing questions and argument on the issue of gang affiliation had a substantial or injurious effect or influence upon the jury's verdict. It did. Accordingly, for the reasons indicated, this Court finds that the Michigan Court of Appeals' decision that the prosecutorial misconduct was not constitutional and was harmless is inconsistent with United States Supreme Court precedent and constitutes an unreasonable application thereof and of the facts in light of the record. Petitioner is thus entitled to habeas relief on this prosecutorial misconduct claim.

**V.     Conclusion**

The Court concludes that Petitioner is entitled to federal habeas relief on both claims contained in his amended petition.

Accordingly,

**IT IS ORDERED** that the amended petition for a writ of habeas corpus is **CONDITIONALLY GRANTED**. The State must retry Petitioner or release him from custody within 90 days of the date of this order. If the State fails to take such action, this Court shall consider the issuance of an additional writ unconditionally releasing Petitioner from state

custody.  Should the State appeal this decision to the United States Court of Appeals for the

Sixth Circuit, this order is stayed pending the disposition of that appeal.


<u>S/Arthur J. Tarnow</u>
Arthur J. Tarnow
United States District Judge

Dated: December 22, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on
December 22, 2010, by electronic and/or ordinary mail.

<u>S/Catherine A. Pickles</u>
Judicial Secretary